United States Courts
Southern District of Texas
FILED

SEP 0 1 2009

Clerk of Court

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NOBLE DRILLING SERVICES, INC., | § | |
| PLAINTIFF, | § | |
| | § | **H-09-2825** |
| v. | § | Civil Action No. _____ |
| | § | |
| CERTEX USA, INC., | § | |
| BRIDON-AMERICAN CORP., AND | § | |
| BRIDON INTERNATIONAL, LTD., | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Noble Drilling Services, Inc., Plaintiff, files this Original Complaint complaining of

Certex USA, Inc., Bridon-American Corp. and Bridon International Ltd., Defendants:

### A. Parties

1.     Plaintiff, Noble Drilling Services, Inc. (Noble), is a corporation that is organized

under the laws of the State of Delaware, with its principal place of business in Sugar Land, Fort

Bend County, Texas.

2.     Certex USA, Inc. (Certex) is a corporation organized and existing under the laws

of the state of Arizona, whose headquarters are located at 1110 Lockwood Street, Houston,

Harris County, Texas, 77020-7322.  Certex is authorized to do business in the state of Texas and

may be served with process by serving its registered agent for service of process, C.T.

Corporation System, 350 N. St. Paul Street, Dallas, Texas, 75201.

3.      Defendant, Bridon American Corporation (Bridon American or Bridon, collectively with Bridon International) is a foreign corporation organized and existing under the laws of the state of New York, whose home office is located at 425 Post Road, Fairfield, Connecticut, 06824.  Bridon is authorized to do business in the state of Texas and may be served with process by serving its registered agent for service of process, C.T. Corporation System, 350 North St. Paul Street, Dallas, Texas, 75201.

4.      Defendant, Bridon International, Ltd. (Bridon Int'l or Bridon, collectively with Bridon American), is a foreign corporation and corporate affiliate with Bridon American.  Bridon Int'l is not licensed to do business in the State of Texas, but it has done and continues to do business in the State of Texas.  Upon information and belief, Bridon Int'l may be served with process at its registered address of Precision House, Arden Road, Alcester, B49 6HN, Warwickshire, United Kingdom, or at its trading address of Balby Carr Bank, Doncaster, DN4 5JQ, South Yorkshire, United Kingdom.

## B. Jurisdiction

5.      The court has jurisdiction over the lawsuit because the suit arises under the Outer Continental Shelf Lands Act (OCSLA).  33 U.S.C.A. § 1331 *et seq.* (2000).  Noble's drilling rigs were damaged off the coast of but beyond the territorial waters of Louisiana, and on the outer continental shelf (OCS) of the United States.

6.      Noble suffered injury while operating an artificial island attached to the seabed to explore, develop, and produce resources from the OCS.

2

7.     Pursuant to the OCSLA, Louisiana state law shall apply. *Id.*

## C.  Venue

8.     Venue is proper under 28 U.S.C. §1391 because Certex resides in this district.

## D.  Conditions Precedent

9.     All conditions precedent have been performed or have occurred for all causes of action stated herein.

## E.  Facts

10.     Noble is an offshore drilling contractor and a leading provider of drilling services for the oil and gas industry.  Noble owns and operates several mobile offshore drilling units ("MODUs"), which are commonly referred to as "offshore drilling rigs."

11.     Bridon is a manufacturer of wire rope, including several types of wire rope that are utilized by contractors such as Noble for mooring offshore rigs.  Certex and Bridon American are Bridon International's agents.  Certex is Bridon's distributor of wire ropes in Texas, amongst other states.  Typical wire rope consists of individual strands of circular wires wrapped together into multiple "strands," each of which are then wrapped around a central "core" strand:



- **Wire** – a single element

- **Strand** – a number of single wires twisted together

- **Rope** – a number of strands twisted around a central core of steel or fibre



12.     In addition to the standard form of wire rope, Bridon also manufactures wire ropes with outer wires that have been intentionally molded into an asymmetrical form.  This design of wire rope is referred to by Bridon as "Bridon DB2K" wire rope.  An example of Bridon DB2K wire rope is shown below:





13.     Standard wire ropes have a typical working life of at least seven (7) years.  Bridon DB2K wire ropes purport to be a superior replacement product to standard wire ropes.  Each of Noble's MODUs at issue in this case incorporated Bridon DB2K wire rope as a critical element in their mooring systems.

4

14.     In 2004, Noble contacted Bridon and Certex to obtain pricing information for the purchase of a number of standard wire mooring ropes.    In response, Bridon and Certex represented to Noble that Bridon had designed and developed a method of manufacturing wire ropes that was far superior to standard wire ropes, known as "Bridon DB2K" wire rope.  Certex and Bridon represented that, due to its design, Bridon DB2K wire ropes were stronger than standard wire ropes of the same size, and that they had a longer working life than standard wire ropes.   Due to the purportedly superior design of Bridon DB2K wire ropes, Noble's cost to purchase Bridon DB2K wire ropes was higher than the cost of standard wire ropes.

15.     In or around December 2005, based on representations from Certex and Bridon that Bridon's DB2K wire ropes would provide superior performance to standard wire ropes, Noble contracted to purchase a number of Bridon DB2K wire ropes for use on Noble's offshore drilling rigs. *Exh. 1* (Original Purchase Orders).  Noble made the purchases subject to Noble's Terms and Conditions. *Exh. 2* (Terms and Conditions Acceptance by Certex).

16.     Beginning in 2007, Noble installed Bridon DB2K wire ropes on multiple Noble rigs.  For example, Noble operates several EVA-4000™ rigs including the *Noble Amos Runner*, the *Noble Paul Romano*, the *Noble Max Smith,* and the *Noble Jim Thompson*.  Noble replaced the wire ropes used to moor these EVA-4000™ rigs with the Bridon DB2K wire ropes purchased from Bridon and Certex.  Each EVA-4000™ drilling rig has 12 mooring lines, for a total of 48 Bridon DB2K wire ropes.  Three of Noble's four EVA-4000™ rigs are operating in the Gulf of Mexico.  The installation of Bridon DB2K wire ropes on all EVA-4000™ rigs was part of an upgrade plan implemented in part to comply with the United States Mineral and Management Service's ("MMS") requirement that all drilling rigs in the Gulf of Mexico enhance their

moorings in the wake of Hurricanes Ivan, Rita, and Katrina.  Noble also installed Bridon DB2K wire ropes on other rigs as well, such as the *Noble Lorris Bouzigard*.

17.     Bridon and Certex represented that Bridon DB2K wire ropes were fit for service as mooring lines for Noble's MODUs, and further represented that Bridon DB2K wire ropes were superior to standard wire ropes of the same diameter.  By way of example, but not limitation, Bridon and Certex represented that Bridon DB2K wire ropes (a) would have superior crush and abrasion resistance to standard wire rope; (b) that Bridon DB2K wire ropes had a higher strength-to-diameter ratio than standard wire rope, which resulted in higher holding capacity – a.k.a. maximum breaking load – than other wire ropes of the same diameter; and (c) that Bridon DB2K wire ropes had breaking strengths exceeding 1,300 kips (1 kip=1,000 lbs).

18.     In September 2008, Hurricane Ike traversed the Gulf of Mexico.   During Hurricane Ike, three Noble rigs equipped with Bridon DB2K wire ropes – the *Noble Amos Runner*, the *Noble Lorris Bouzigard*, and the *Noble Paul Romano* – suffered mooring failures. Based on Bridon's and Certex's representations and certifications, the Bridon DB2K wire ropes failed under conditions that were well below the maximum breaking capacity of the wire ropes.

19.     As of September 2008, the Bridon DB2K wire ropes on Noble's drilling rigs had been in service for between nine and fifteen months.  Based on the represented breaking strengths of Bridon's DB2K wire ropes, and based on their like-new condition, the Bridon DB2K wire ropes should not have failed during Hurricane Ike.  Bridon's and Certex's representations notwithstanding, the Bridon DB2K wire ropes did not perform at the levels represented by

Bridon and Certex when the wire ropes were placed in actual, in-service working conditions during Hurricane Ike.

20.     As a result of the premature failures of the Bridon DB2K wire ropes, MMS required that Noble remove and replace the 3¼" Bridon DB2K wire ropes from use on all rigs operating in the Gulf of Mexico under its jurisdiction.  When Noble sought to purchase identical replacement Bridon DB2K wire ropes immediately after Hurricane Ike, Bridon and Certex refused to sell them to Noble, instead offering to sell Noble a modified version of the DB2K wire ropes that Noble originally purchased.  Upon information and belief, Bridon and Certex already knew about the defects in the design of its Bridon DB2K wire ropes.  Further, Bridon and Certex represented that Bridon already had a new design and manufacturing process in place to manufacture what Bridon and Certex referred to as "enhanced" DB2K wire ropes immediately.

21.     After Hurricane Ike, Noble, Certex, and Bridon performed tests on never-before-used Bridon DB2K wire ropes.  The test results showed that the unused wire ropes failed below their rated and represented breaking strengths.  Based on Bridon's and Certex's representations, neither the in-service nor the unused wire ropes should have failed when they did (in comparison to their purported maximum breaking load).

22.     Due to the misrepresentations by Bridon and Certex of the specifications and capacity of Bridon DB2K wire ropes, Noble suffered significant losses including but not limited to costs to (a) replace the Bridon DB2K wire ropes, (b) repair the rigs, (c) rent temporary equipment in order to maintain its then-current drilling contracts, (d) and install both temporary

7

and permanent replacement equipment.  In addition, Noble suffered significant losses as a result of the lost profits associated with their rigs being out of service.

23.      Prior to filing suit, Noble submitted a formal request to Bridon and Certex to replace, without cost to Noble, all of the DB2K wire ropes.  Bridon and Certex both refused.

## F.  Count 1 – Breach of Contract

24.      The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

25.      Noble and Certex executed a valid and enforceable written contract for the sale to Noble of Bridon DB2K wire ropes.

26.      Certex breached its contracts with Noble by failing to satisfy its obligations and representations under the terms of the contract and by failing to deliver wire ropes of the quality and capacity represented by Certex and Bridon.  Certex's breaches were the actual and proximate cause of direct damages to Noble in the form of (a) multiple mooring line failures that should never have occurred, (b) the resulting loss of use of multiple drilling rigs, and (c) costs related to repairing the rigs and replacing the failed mooring lines with rented equipment, and (d) lost profits as a result of rigs being out of service.  Noble's actual, compensatory, exemplary, and punitive damages are in an amount in excess of the minimum jurisdictional limits of this Court, and Noble seeks to recover for the damages incurred.

## G.  Count 2 – Breach of Express Warranties

27.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

28.     Bridon and Certex sold Noble multiple lengths of Bridon DB2K wire rope.

29.     Bridon and Certex, in addition to any warranties implied by fact or law, expressly warranted that all items sold to Noble were free from defects in workmanship, material, and design.

30.     Bridon and Certex further expressly warranted that the materials provided conformed strictly to applicable specifications, including but not limited to wire breaking strength, fitness and sufficiency for the purpose intended, and merchantability.

31.     Certex, on behalf of itself and Bridon, further expressly warranted that in the event of a breach of warranty, Noble may, at its option, either (a) return for credit at Certex's expense or (b) require prompt replacement of the defective or non-conforming goods, and that Certex shall repair or replace the items without cost to Noble.

32.     The representations made by Bridon and Certex were made via verbal and written affirmations of fact, promises, product descriptions, and the displaying of product photographs, samples, and models.

33.     Certex's and Bridon's representations were part of the basis of the bargain with Noble.  This is evident in the incorporation of the above-referenced terms into the parties' contract and purchase orders.

9

34.     The Bridon DB2K wire ropes provided to Noble by Certex did not comply with Bridon's and Certex's representations.  By way of example, but not limitation, the Bridon DB2K wire ropes failed at loads under which, based on the representations made by Bridon and Certex, they never should have failed.  These failures occurred not only with respect to Bridon DB2K wire ropes that were placed in-service, but also occurred when unused Bridon DB2K wire ropes were tested (and failed at loads under which, based on Bridon's and Certex's representations, they never should have failed).

35.     Noble has notified Bridon and Certex of the breaches of the aforementioned warranties.

36.     Bridon's and Certex's breaches directly and proximately caused Noble's injuries.  Noble seeks actual, compensatory, exemplary, and punitive damages within the jurisdictional limits of this Court.

## H.  Count 3 – Breach of Implied Warranties

37.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

38.     Certex, a distributor of Bridon wires, sold Bridon DB2K wire ropes to Noble.

39.     The goods were not merchantable when they left the possession of Bridon.  They did not pass without objection.  They were not of fair average quality.  They were not fit for their particular purpose.  They did not meet the quality level represented by Bridon and Certex.  They

were not properly tested to ensure they performed as represented.   And they did not conform to the promises and affirmations of fact as represented by Bridon and Certex.

40.     Noble has notified Bridon and Certex of the aforementioned breaches.

41.     Bridon's and Certex's breaches directly and proximately caused injuries to Noble. Noble seeks actual, compensatory, exemplary, and punitive damages.

### I.  Count 4 – Negligence/Negligent Misrepresentation/Gross Negligence

42.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

43.     Certex and Bridon, both of which had pecuniary interests in the business transactions between Noble and Certex related to the sale of Bridon wires, made representations or failed to disclose material information related to Bridon DB2K wire ropes in the course of those transactions.   Neither Bridon nor Certex exercised reasonable care or competence in obtaining, evaluating, warning, or communicating information to Noble.  Noble suffered losses by justifiably relying on Bridon's and Certex's representations. As a result of Bridon's and Certex's callous and reckless disregard for Noble's rights, Noble now seeks actual, compensatory, exemplary, and punitive damages within the jurisdictional limits of this Court.

44.     Additionally, Bridon was negligent in the design of the wire ropes in a fashion that allowed normal use to result in failures, in the manufacture of the wire ropes in a fashion that allowed normal use to result in failures, and in such other acts of negligence that may be developed in discovery or shown at trial.

## J.  Count 5 – Fraud/Fraudulent Inducement

45.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

46.    Bridon and Certex represented to Noble that Bridon DB2K wire ropes had particular characteristics and were tested to confirm that the wire ropes were appropriate for use on Noble's offshore drilling units.

47.    Bridon's and Certex's representations to Noble were material because, but for those representations, Noble would not have purchased the wire ropes at issue and would not have suffered the losses that flowed from the premature failure of the Bridon DB2K wire ropes.

48.    Bridon's and Certex's acts and omissions were made either intentionally or recklessly (as a positive assertion) without knowledge of its truth.  Those acts and omissions amounted to false representations of fact, failures to disclose, and failures to warn that directly and proximately caused injuries to Noble.

49.    Noble's injuries resulted from Bridon's and Certex's fraud, malice, or callous disregard for Noble's rights, which entitles Noble to exemplary and punitive damages in addition to the actual and compensatory damages sought herein.

## K.  Count 6 - Redhibition

50.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

51.     Bridon and Certex are sellers of the Bridon DB2K wire ropes.  As manufacturer of the wire ropes, Bridon is deemed to know of the defects in the wire ropes.  At the time of sale to Noble, the Bridon DB2K wire ropes contained redhibitory defects that were unapparent to Noble. The defect or defects rendered the Bridon DB2K wire ropes unfit for ordinary use and for the particular purposes for which they were intended.  Further, the redhibitory defects rendered their use so inconvenient that Noble would not have purchased the wire ropes had Noble known of the defects.  Noble provided Bridon and Certex with the opportunity to replace the defective wire ropes, and both Bridon and Certex failed to do so.

## L.  Count 7 – Louisiana Products Liability Act

52.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

53.     The DB2K wire ropes manufactured by Bridon failed during their reasonably anticipated use and under conditions that should not have resulted in their failure.

54.     The DB2K wire ropes failed as a result of the following defects:

    a.  The wire ropes were unreasonably dangerous in construction or composition to the extent that they deviated from the manufacturers' design so as to fail during reasonably anticipated use that did not exceed the specifications of the wire ropes;

    b.  In the alternative, the wire ropes were unreasonably dangerous in design if, in fact, they were built in accordance with design standards, but those standards

allowed for the failure of the wire ropes during reasonably anticipated use that did not exceed the specifications of the wire ropes;

c.  To the extent there is any question about the means of use of the wire ropes, or their propensity to fail as they did, and to the extent that the defendants possessed information about such matters, the wire ropes are further defective for the lack of an adequate warning as to the danger of wire rope failures of the type that resulted in Noble's damages; and

d.  The wire ropes are unreasonably dangerous for failures to conform to the warranties made about it, including their maximum breaking loads, their superior strength-to-diameter ratios, their superior durability, and their superior working life.

## **M.  Actual Damages**

55.     The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

56.     As a direct and proximate result of defendants' conduct, Noble suffered actual damages in excess of $50,000,000.00 (Fifty Million Dollars).  Noble's injuries and damages include:

a.  Actual damages in excess of the minimum jurisdictional limits of this court including but not limited to

i.   Costs of replacement;

ii.  Costs of repair;

14

    iii.    Costs of delay;

    iv.    Partial destruction/Loss of use;

b.  Lost profits;

c.  Costs of substitute performance;

d.  Reliance damages;

e.  Restitution; and

f.  Loss of goodwill.

### N.  Attorney Fees & Costs

57.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

58.    Based on the actions of Bridon and Certex, Noble is entitled to an award of its reasonable attorney fees and costs under the law. See, e.g., Louisiana Civil Code § 2545.

### O.  Exemplary/Punitive Damages

59.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

60.    As a result of Certex and Bridon's gross negligence, as well as their willful, intentional, callous and reckless conduct, Noble seeks exemplary and punitive damages to the extent permitted by law.

## P.  Other Relief

61.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

62.    Finally, Noble seeks relief under any additional theory of law which may be justified under the relevant facts properly proven at trial.

## Q.  Jury Trial Requested

63.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

64.    Noble asserts its rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## R.  Prayer

65.    The allegations in the preceding paragraphs of this Complaint are incorporated herein by reference as if fully set forth.

66.    For these reasons, plaintiff asks for judgment against defendant for the following:

a.  Actual damages;

b.  Consequential and special damages;

c.  Exemplary and punitive damages;

d.  Pre-judgment and post-judgment interest as allowed by law;

e.  Reasonable attorney fees;

f.   Costs of suit; and

g.   All other relief the court deems appropriate.

Respectfully submitted,

PAUL J. DOBROWSKI (w/p rgw)
Paul J. Dobrowski
Fed. Bar No. 3208

Attorney in Charge for Plaintiff

OF COUNSEL:

DOBROWSKI L.L.P.
Lee M. Larkin
Fed. Bar No. 5152
Anthony D. Weiner
Fed. Bar No.  38618
1010 Lamar, Suite 1350
Houston, Texas  77002
Tel:     (713) 659-2900
Fax:    (713) 659-2908



**NOBLE DRILLING SERVICES INC.**
13135 South Dairy Ashford, Suite 800
Sugar Land, Texas 77478
**Telephone: (281) 276-6143    Fax: (281) 276-6122/3**

| Title: | **NOBLE DRILLING SERVICES INC.** *Purchase Order Receipt Acknowledgement* | Document No. |
|---|---|---|
| | | NDS-PO Receipt Ack. |
| | | Page 1 of 8 |

December, 18th. 2005

Certex.
Attn.: Jeff Fritsch/Chris Black, 713-674-2700
Subject:    NOBLE DRILLING SERVICES INC.
               **NOBLE CORPORATION**

Find attached the following purchase order(s):
P.O. **4500269604**

Please review and approve the above referenced purchase order(s) and attached terms and conditions.   Within (1) week of your review, please sign and return this acknowledgment to my attention. Also, reconfirm the delivery date of each item referenced in the purchase order in the space provided below.   If there are any questions regarding this purchase order and the terms contained herein, please contact me at the above number.

Please confirm ~~2% 10 days/ net 30 days as payment term~~ *N/O*

Regards,

Hans Dingemanse
Sr. Buyer - Purchasing

Receipt Acknowledgment: _____    *(PLEASE SEE ATTACHED CHANGES)*

Confirm Delivery Date:  *9 LINES - APRIL 2006*
                                   *9 LINES - JUNE 2006*
                                   *10 LINES - AUGUST 2006*
                                   *9 LINES - OCTOBER 2006*

*"F" 1,4,7,10*
*+*
*"A" 13*

PO Receipt Acknowledgement                                      12/14/05 3:59 PM

EXHIBIT
tabbies
1

# ***Purchase Order***
### Noble Drilling Services, Inc.

**Purchasing Company:**
Noble Drilling Services, Inc.
13135 S.Dairy Ashford, Ste 800
Sugar Land TX  77478

**PO Number:** 4500269604   **PO Date:** 10/04/2005
This purchase order number must appear on all invoices,
packing slips and correspondence.

**Vendor 1011991:**
CERTEX USA, INC
1110 LOCKWOOD DRIVE
HOUSTON TX  77020-7322

**Ship To:**
Eagle Global Logistics RTM
Attn:  Gerald Bell
Sheffield Straat 21-31
ROTTERDAM
Rotterdam 3047AN
NETHERLANDS

**Vendor Phone:**   713-674-3000
**Vendor Fax No:**   713-674-2700
**Contact Person:** Jeff Fritsch/Chris Black

**Telephone:** 281-276-6139
**Fax:** 281-276-6122

*FROM*

**Plant Name(#):**  Noble Drilling Services, Inc.(L026)
**Shipping Terms:**  FOB Ocean Freight
**Payment Terms:**  Within 30 days Due net
**Currency:**  USD

**Delivery Date:**  05/30/2006  *TO 10/10/2006*
**Mode of Shipment:**  Ocean
**Delivery Terms:**   ~~FOB~~ Gelsenkirchen  *FAS*
**Ultimate Destination:**  GOM

Rig# to be advised.

IO#
Quote from Jeff Fritch,
dated 10/03/05
Buyer: Hans Dingemanse
(281) 276-6143

Quoted Price includes shipping cradle
suitable for ocean transport of this
reel.

Please contact Kevin Smith at (281) 276-6130
with a delivery schedule and a delivery date
ex Gelsenkirchen Germany, so that he can arrange
shipment of the anchor wire from Rotterdam Port,
The Netherlands, to Delmar Yard in Fourchon,LA

Noble's Standard Terms and Conditions will
apply to this purchase order except where duly
noted in the header text of this PO.  Noble
Drillings Terms and conditions are available
by e-mail upon request.

SHIPPING:  All material must be visibly tagged with
'NOBLE DRILLING CORPORATE' and corresponding Noble purchase
order number.  A complete and detailed packing
slip must accompany all material.  If this material
is being shipped to a packer for shipment to a foreign
country, the detailed packing list must be priced so
         Important: This purchase order is expressly conditioned upon acceptance
              by supplier of the terms and conditions on back of this form.

**PO Number:** 4500269604   **PO Date:** 10/04/2005
This purchase order number must appear on all invoices,
packing slips and correspondence.

that proper shipping documents can be prepared.
Failure to do so will slow the payment process
of your invoice.

SCHEDULES:  If applicable, a production schedule will be
submitted to Noble Drilling within one week of acceptance
of this PO so that any planning for witnessing of tests
or inspections can be arranged.  A Noble representative
may tour your facility during production.  The production
schedule will be delivered to:

Noble Drilling Corporation
Attn: Hans Dingemanse
13135 South Dairy Ashford, Suite 800
Sugar Land, TX 77478

Phone: 281-276-6143
Fax: 281-276-6123
Email:HDingemanse@noblecorp.com

WARRANTY: Vendor warrants the equipment/material
purchased on this purchase order to be free from
defects in design, workmanship, and material; to
conform strictly to specifications and drawings; and fit
for purpose.  Any deficiencies reported within a period
of eighteen (18) months from date of shipment from
vendor's facility or twelve (12) months from commissioning
date of the equipment, whichever comes first, will be
considered a breach of warranty.  In the event of such
warranty claim, the vendor will replace or repair the
equipment/material at no cost to Noble Drilling.

CANCELLATION:  In the event the need arises to cancel
this purchase order prior to equipment/material delivery,
vendor may charge a restocking or cancellation fee to
Noble Drilling not to exceed cost of material.  All
charges to be auditable by Noble.

DOCUMENTATION:  Four (4) copies of all related factory
acceptance tests, inspections, material certifications,
etc. are to be provided.
-Four (4) sets of certified drawings if hard copy,
 one (1) set if electronic.
-Four (4) sets of operating and maintenance manuals
-Four (4) sets of all related factory acceptance
 tests, inspections, material certificates
-Certificates of conformancy

All documentation (only) to be sent,
as soon as available to:

**PO Number: 4500269604   PO Date: 10/04/2005**
This purchase order number must appear on all invoices,
packing slips and correspondence.

Noble Drilling Service, Inc
13135 South Dairy Ashford, Suite 800
Sugar Land, TX 77478
Attn: Purchasing Department

| Item | Qty. | UOM | Mat No/Description | Unit Price | Net Price |
|------|------|-----|-------------------|-----------|-----------|
| 00001 | 9.00 | EA | 3-1/4" X 10,500 FT 6 X 52 WS IWRC DYFORM DB2K RRL DRAWN GALVANIZED,WITH MINIMUM BREAKING LOAD OF 1,367,000 LBS. WIRE ROPE TO BE FURNISHED ON STEEL REELS WITH SHIPPING CRADLES SUITABLE FOR TRANSPORTATION. INCLUDES BRIDON BRILUBE 2 MARINE LUBRICATION. WIRE ROPE TO HAVE ABS THIRD PARTY WITNESS OF DESTRUCTIVE TEST OF WIRE ROPE SAMPLE. | | |

ADDITIONAL SPECIFICATIONS-

A. WIRE ROPE WILL EXCEED SPECIFICATIONS
FOR ANCHOR LINES AS DESCRIBED IN API
SPEC. 9A,25TH EDITION, FEBRUARY 2004.
PLEASE NOTE THAT WE ARE UNABLE TO OFFER
GOODS STRICTLY IN ACCORDANCE WITH
API SPEC. 9A BECAUSE THE HIGHER BREAKING
STRENGTH ROPES ARE NOT YET COVERED BY
THE SPECIFICATION.

B. WIRE ROPE SIZE WILL BE  3.25"
WITH TOLERANCE OF -0%, +5% AS DESCRIBED
IN PARA. 5.4.2 OF API SPEC. 9A,
JUNE 1995.

*APRIL 2006*

C. WEIGHT PER REEL- 128 SHORT TONS
PER REEL
(ADDED 15% FOR REEL WEIGHT).
NET WT -21.1 LBS PER FT.

| | | | | | |
|--|--|--|--|--|--|
| | | | Gross Price Tracking Nbr: 925026 | 292,246.00 | 2,630,214.00 |
| 00002 | 1.00 | EA | 146449 Mill Certificate (Wire Rope) | | |

**PO Number: 4500269604   PO Date: 10/04/2005**
This purchase order number must appear on all invoices,
packing slips and correspondence.

Page
4

| Item | Qty. | UOM | Mat No/Description | Unit Price | Net Price |
|------|------|-----|--------------------|-----------|-----------|
| 00003 | 1.00 | EA | 146450<br>Destructive Sample Test | | |
| 00004 | 9.00 | EA | 3-1/4" X 10,500 FT 6 X 52 WS IWRC<br>DYFORM DB2K RRL DRAWN<br>GALVANIZED,WITH MINIMUM BREAKING<br>LOAD OF 1,367,000 LBS.<br>WIRE ROPE TO BE FURNISHED ON STEEL<br>REELS WITH SHIPPING CRADLES SUITABLE<br>FOR TRANSPORTATION.<br>INCLUDES BRIDON BRILUBE 2 MARINE<br>LUBRICATION. WIRE ROPE TO HAVE ABS<br>THIRD PARTY WITNESS OF DESTRUCTIVE<br>TEST OF WIRE ROPE SAMPLE. | | |

ADDITIONAL SPECIFICATIONS-

A. WIRE ROPE WILL EXCEED SPECIFICATIONS
FOR ANCHOR LINES AS DESCRIBED IN API
SPEC. 9A,25TH EDITION, FEBRUARY 2004.
PLEASE NOTE THAT WE ARE UNABLE TO OFFER
GOODS STRICTLY IN ACCORDANCE WITH
API SPEC. 9A BECAUSE THE HIGHER BREAKING
STRENGTH ROPES ARE NOT YET COVERED BY
THE SPECIFICATION.

B. WIRE ROPE SIZE WILL BE  3.25"
WITH TOLERANCE OF -0%, +5% AS DESCRIBED
IN PARA. 5.4.2 OF API SPEC. 9A,
JUNE 1995.

*JUNE 2006*

C. WEIGHT PER REEL- 128 SHORT TONS
PER REEL
(ADDED 15% FOR REEL WEIGHT).
NET WT -21.1 LBS PER FT.

| | | | | | |
|------|------|-----|--------------------|-----------|-----------|
| | | | Gross Price<br>Tracking Nbr: 925026 | 292,246.00 | 2,630,214.00 |
| 00005 | 1.00 | EA | 146449<br>Mill Certificate (Wire Rope) | | |
| 00006 | 1.00 | EA | 146450<br>Destructive Sample Test | | |

**PO Number:** 4500269604   **PO Date:** 10/04/2005
This purchase order number must appear on all invoices, packing slips and correspondence.

| Item | Qty. | UOM | Mat No/Description | Unit Price | Net Price |
|------|------|-----|--------------------|------------|-----------|
| 00007 | 9.00 | EA | | | |

3-1/4" X 10,500 FT 6 X 52 WS IWRC
DYFORM DB2K RRL DRAWN
GALVANIZED,WITH MINIMUM BREAKING
LOAD OF 1,367,000 LBS.
WIRE ROPE TO BE FURNISHED ON STEEL
REELS WITH SHIPPING CRADLES SUITABLE
FOR TRANSPORTATION.
INCLUDES BRIDON BRILUBE 2 MARINE
LUBRICATION. WIRE ROPE TO HAVE ABS
THIRD PARTY WITNESS OF DESTRUCTIVE
TEST OF WIRE ROPE SAMPLE.

ADDITIONAL SPECIFICATIONS-

A. WIRE ROPE WILL EXCEED SPECIFICATIONS
FOR ANCHOR LINES AS DESCRIBED IN API
SPEC. 9A,25TH EDITION, FEBRUARY 2004.
PLEASE NOTE THAT WE ARE UNABLE TO OFFER
GOODS STRICTLY IN ACCORDANCE WITH
API SPEC. 9A BECAUSE THE HIGHER BREAKING
STRENGTH ROPES ARE NOT YET COVERED BY
THE SPECIFICATION.

B. WIRE ROPE SIZE WILL BE  3.25"
WITH TOLERANCE OF -0%, +5% AS DESCRIBED
IN PARA. 5.4.2 OF API SPEC. 9A,
JUNE 1995.

*AUGUST 2006*

C. WEIGHT PER REEL- 128 SHORT TONS
PER REEL
(ADDED 15% FOR REEL WEIGHT).
NET WT -21.1 LBS PER FT.

| | | | Gross Price<br>Tracking Nbr: 925026 | 292,246.00 | 2,630,214.00 |
|------|------|-----|--------------------|------------|-----------|
| 00008 | 1.00 | EA | 146449<br>Mill Certificate (Wire Rope) | | |
| 00009 | 1.00 | EA | 146450<br>Destructive Sample Test | | |

**PO Number: 4500269604   PO Date: 10/04/2005**
This purchase order number must appear on all invoices,
packing slips and correspondence.

| Item | Qty. | UOM | Mat No/Description | Unit Price | Net Price |
|------|------|-----|--------------------|-----------|-----------|
| 00010 | 1.00 | EA | 3-1/4" X 10,500 FT 6 X 52 WS IWRC DYFORM DB2K RRL DRAWN GALVANIZED,WITH MINIMUM BREAKING LOAD OF 1,367,000 LBS. WIRE ROPE TO BE FURNISHED ON STEEL REELS WITH SHIPPING CRADLES SUITABLE FOR TRANSPORTATION. INCLUDES BRIDON BRILUBE 2 MARINE LUBRICATION. WIRE ROPE TO HAVE ABS THIRD PARTY WITNESS OF DESTRUCTIVE TEST OF WIRE ROPE SAMPLE. | | |

ADDITIONAL SPECIFICATIONS-

A. WIRE ROPE WILL EXCEED SPECIFICATIONS
FOR ANCHOR LINES AS DESCRIBED IN API
SPEC. 9A,25TH EDITION, FEBRUARY 2004.
PLEASE NOTE THAT WE ARE UNABLE TO OFFER
GOODS STRICTLY IN ACCORDANCE WITH
API SPEC. 9A BECAUSE THE HIGHER BREAKING
STRENGTH ROPES ARE NOT YET COVERED BY
THE SPECIFICATION.

B. WIRE ROPE SIZE WILL BE  3.25"
WITH TOLERANCE OF -0%, +5% AS DESCRIBED
IN PARA. 5.4.2 OF API SPEC. 9A,
JUNE 1995.

C. WEIGHT PER REEL- 128 SHORT TONS
PER REEL
(ADDED 15% FOR REEL WEIGHT).
NET WT -21.1 LBS PER FT.

*AUGUST 2006*

| | | | | | |
|------|------|-----|--------------------|-----------|-----------|
| | | | Gross Price Tracking Nbr: 925026 | 292,246.00 | 292,246.00 |
| 00011 | 1.00 | EA | 146449 Mill Certificate (Wire Rope) | | |
| 00012 | 1.00 | EA | 146450 Destructive Sample Test | | |

**PO Number: 4500269604   PO Date: 10/04/2005**
This purchase order number must appear on all invoices,
packing slips and correspondence.

| Item | Qty. | UOM | Mat No/Description | Unit Price | Net Price |
|------|------|-----|--------------------|-----------|-----------|
| 00013 | 9.00 | EA | 3-1/4" X 10,500 FT 6 X 52 WS IWRC DYFORM DB2K RRL DRAWN GALVANIZED,WITH MINIMUM BREAKING LOAD OF 1,367,000 LBS. WIRE ROPE TO BE FURNISHED ON STEEL REELS WITH SHIPPING CRADLES SUITABLE FOR TRANSPORTATION. INCLUDES BRIDON BRILUBE 2 MARINE LUBRICATION. WIRE ROPE TO HAVE ABS THIRD PARTY WITNESS OF DESTRUCTIVE TEST OF WIRE ROPE SAMPLE. | | |

ADDITIONAL SPECIFICATIONS-

A. WIRE ROPE WILL EXCEED SPECIFICATIONS
FOR ANCHOR LINES AS DESCRIBED IN API
SPEC. 9A,25TH EDITION, FEBRUARY 2004.
PLEASE NOTE THAT WE ARE UNABLE TO OFFER
GOODS STRICTLY IN ACCORDANCE WITH
API SPEC. 9A BECAUSE THE HIGHER BREAKING
STRENGTH ROPES ARE NOT YET COVERED BY
THE SPECIFICATION.

B. WIRE ROPE SIZE WILL BE  3.25"
WITH TOLERANCE OF -0%, +5% AS DESCRIBED
IN PARA. 5.4.2 OF API SPEC. 9A,
JUNE 1995.

C. WEIGHT PER REEL- 128 SHORT TONS
PER REEL
(ADDED 15% FOR REEL WEIGHT).
NET WT -21.1 LBS PER FT.

| | | | Gross Price Tracking Nbr: 925026 | 292,246.00 | 2,630,214.00 |
|------|------|-----|--------------------|-----------|-----------|
| 00014 | 1.00 | EA | 146449 Mill Certificate (Wire Rope) | | |
| 00015 | 1.00 | EA | 146450 Destructive Sample Test | | |

**Total net value excl. tax USD:       10,813,102.00**

EXHIBIT
2

# NEW VENDOR REQUEST FORM

*0/0 %*

NOBLE

VENDOR NAME: *Certex USA Inc* ✓

REQUESTOR: *Vendor*

DATE: *9-01-04*

**Instructions**
1. Complete the required information section on this page.
2. Provide the new vendor with Noble's purchasing terms and conditions, and return the **original signed** acknowledgement of these terms and conditions to the Pro-Opt. Manager.
3. Secure approval of the new vendor from the Pro-Opt. Manager.
4. Have the new vendor complete the attached vendor enrollment (including W-9 and T&C's for ACH payments) and return the **original signed** forms to Corporate Accounts Payable in Sugarland, TX.

**\*\*Required Information\*\***

Vendor Type (Select One Only): ☑ General ☐ Garnishment ☐ Employee ☐ Expenses ☐ Claims

Will Noble issue purchase orders to this vendor? ☑ Yes ☐ No

Noble SAP Company Code: *NOBL / L068*   Payment Terms: *ZB30*

Describe the products/services provided by vendor: *replaces Certex - Houston Created new company for USA - branch*

Why does this vendor need to be added to the approved vendor list? *for lifting supplies and equipment*

Will this vendor work at a Noble facility (e.g. rig, office, construction site)? ☐ Yes ☑ No

If YES, the requestor must discuss Noble's requirements for indemnity and insurance with the Risk Management Department and obtain documentation necessary to comply with current policy. Has the requestor secured such documentation and provided it to the Risk Management Department? ☐ Yes ☐ No

Is this vendor an independent contractor (i.e. individual providing services)? ☐ Yes ☑ No

If YES, the contractor must be approved by the Senior Vice President of Administration and a contract which complies with current policy must be executed. Has the requestor secured such approval and provided the signed contract to the Human resources Department? ☐ Yes ☐ No

Signed: _____

Requestor

POSTED

**Accounts Payable Use:**

SEARCH TERM : *Certex USA Inc*
PURCHASING ORGANIZATION : *NDCS*
ORDER CURRENCY (PO VENDORS ONLY : *USD*

VENDOR : *1011991*
DATE ADDED : *9-7-04*

Minority/Women Owned Enterprise  Yes ☐  No ☐

**Approvals:**

PRO-OPT MANAGER: _____
approving use of vendor

MANAGER OF ACCOUNTS PAYABLE: _____
approving addition to master file

POSTED
904

SEP 01 2004 2:18PM   CERTEX ACCOUNTING      7136738035          P.2



# VENDOR ENROLLMENT FORM

Vendor Name: _Certex USA Inc._

*mailing address:*

| | | Alternative |
|---|---|---|
| Street Address: | 1110 Lockwood Drive | P.O. Address: PO Box 201553 |
| City/State: | Houston, TX 77020-7320 | City/State: Dallas, TX 75320-1553 |
| Postal Code: | | Postal Code: |
| Country: | USA | Country: USA |

Contact Person: _Jeff Fritsch_
Telephone Number: _(713) 674-3000_
FAX Number: _(713) 674-2700_
Email Address: _jfritsch@certex.com_           tconley@certex.com

(AP)

I prefer to be paid by  ✓ Electronic Transfer  ___ Check
Remit check payments to the above  ___ street address  ___ alternative address

*Electronic payments will be made using low value payment systems where possible. The attached terms and conditions for ACH payments must be signed if electing electronic payment within the United States.*

## BENEFICIARY BANKING INFORMATION (required for electronic payments)

Bank Name: _Wells Fargo Bank, N.A._
Street Address: _100 West Washington Street 25th Floor_
City/State: _Phoenix, AZ 85003_    Country: _USA_
Postal Code:

Bank Contact Person: _Katie Scardello_          Certex
Telephone Number: _602-378-2309_              confirmation -
FAX Number: _____                            tconley@certex.com
Email Address: _____

| | | Bank Transit / Routing Number: | 1 2 1 0 0 0 2 4 8 |
|---|---|---|---|
| **US Banks** | | | |
| **International Banks** | | Bank Transit Number (SORT Code): | ___ - ___ - ___ |
| | | Bank SWIFT Code: | |

9

Account Number: _410-009-2503_  Currency: _____
Name on Account (if different): _____

Name (Please print): _MARK J. TRAMMELL_  SIGNATURE: _____
Title: _CONTROLLER_      DATE: _7/29/2004_
        Authorized Representative

## TERMS AND CONDITIONS FOR ACH PAYMENTS *(US Banks Only)*

By signing below, the undersigned agrees to accept payment by Noble Drilling Services Inc. or Noble International Finance Company ("Noble") through Automatic Clearing House transfer, and represents that Noble can rely exclusively on the information supplied on the attached enrollment form.

1. Electronic funds transfer will be made to the financial institution and account number supplied by the undersigned on the attached enrollment form.

2. Noble will make payments in accordance with and be governed by the National Automated Clearinghouse Association ("NACHA") trade payment rules. Noble's process is governed by and in accordance with the laws, other than choice of law provision of any particular contract, of Texas, including article 4A of the Uniform Commercial Code as enacted by the State of Texas and amended from time to time.

3. The undersigned understands that an authorized representative of the undersigned must communicate any changes in the information supplied on the enrollment form to Noble in writing. Noble will not be responsible for, and the undersigned agrees to indemnify and hold Noble harmless from, any loss or damage which may arise by reason of error, mistake or fraud in connection with supplying this information.

4. Payment will be initiated within the terms of the commercial agreement between the undersigned and Noble. Payments are deemed made when the undersigned's financial institution has received or has control of the payment transaction.

5. If Noble initiates' payment on a non-banking day at the originating bank, the funds transfer will occur the following banking day. In all cases, banking day is defined as the day on which both trading partners' banks are available to transmit and receive funds transfers.

6. Noble is responsible for the payment transaction up to the point where the undersigned's financial institution receives or has control of the payment transaction. Any loss or damage resulting from the loss of data at that point will be borne by the undersigned unless the loss is due to the gross negligence or willful misconduct of Noble, or its originating bank.

7. The undersigned will notify Noble immediately if payment is not received as described above.

8. Either party can terminate this agreement, provided that notification in writing is submitted by the terminating party to the other party and both parties agree on the termination date.

NAME (Please print):   *MARK J. TRAMMELL*

SIGNATURE:

TITLE:   *CONTROLLER*
          Authorized Representative

DATE:   *7/29/2004*

SEP 01 2004 2:20PM   CERTEX ACCOUNTING   7136738035   P.7

## Form W-9
(Rev. January 2003)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer Identification Number and Certification**

Give form to the requester. Do not send to the IRS.

Name **CERTEX USA, INC.**

Business name, if different from above

Check appropriate box: ☐ Individual/ Sole proprietor  ☒ Corporation  ☐ Partnership  ☐ Other ▶ ............  ☒ Exempt from backup withholding

Address (number, street, and apt. or suite no.) **P O BOX 201553   1110 Lockwood Drive**

Requester's name and address (optional)

City, state, and ZIP code **DALLAS, TX 75320-1553   Houston TX 77080-7322**

List account number(s) here (optional)

### Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note: If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number

Employer identification number **2 0 1 2 1 1 1 2 6**

### Part II  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. person (including a U.S. resident alien).

Certification instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

Sign Here  Signature of U.S. person ▶   Date ▶ 7/12/04

### Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

U.S. person. Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

Note: If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

Foreign person. If you are a foreign person, use the appropriate Form W-8 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

Nonresident alien who becomes a resident alien. Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Cat. No. 10231X   Form W-9 (Rev. 1-2003)

P.07

**N⊕BLE**

### TERMS AND CONDITIONS

1. General. This Purchase Order constitutes Company's offer to Vendor and becomes a binding contract on the terms set forth herein when accepted by Vendor either by acknowledgment or the commencement of performance hereof. This Purchase Order expressly limits acceptance to the terms stated herein. Any additions or different terms proposed by Vendor are rejected unless agreed to in writing by an authorized representative of Company.

2. Vendor shall show the Purchase Order number on all invoices and packages, include priced packing list, tag each item with part number, and on part number changes show old part number in parenthesis. Marking. Export symbols, serial numbers, weights, measurements and other identification shall be clearly stenciled on each box, crate, bundle, package, etc., as directed by the Company prior to shipment. No extra charge for marking shall be allowed unless agreed to and specified in this order.

3. A separate invoice shall be issued for each Purchase Order. Do not combine shipments unless requested or Company is advised prior to shipment.

4. Time is of the Essence. If Vendor does not comply with Company's delivery schedule or in the event it becomes apparent that delivery or completion cannot be accomplished within the time specified, Company, at its option, may either approve a revised delivery schedule or may terminate this Purchase Order either in whole or in part without penalty or liability to Vendor, except for materials received and accepted or work completed and accepted.

5. Warranties. In addition to any warranties implied by fact or law, Vendor expressly warrants all items to be free from defects in design (except Company's design), workmanship, and material; to conform strictly to applicable specifications, drawings, and approved samples; and to be fit and sufficient for the purpose intended and to be merchantable. Such warranties, together with all other service warranties of Vendor, shall benefit Company, its successors, assigns and customers. All warranties shall survive Company's inspection, testing, and acceptance. In the event of breach of warranty Company may, at its option, either return for credit at Vendor's expense or require prompt correction or replacement of the defective or non-conforming goods. Vendor shall replace or repair, without cost to Company, any item on which defective performance, design, workmanship, or materials is found, provided claim is made within two (2) years from date of initial operation.

6. Price. Cash discount periods begin when material or invoice is received, whichever is later; provided, such period shall be expended during any delay caused by errors in invoicing necessitating correction. The prices specified in this Purchase Order shall prevail subject to the following provisions: a) Company shall receive the benefit of any general reduction in Vendor's prices prior to delivery, and in no event shall Company be charged higher prices than Vendor's other similar customers who take delivery at the same time and in substantially the same amounts, b) where escalation is expressly agreed to be applicable, Company shall not be subject to price increases effective after the specified delivery or completion date, and c) if price is omitted on this Purchase Order it is agreed that Vendor's price will be the last quoted or the lowest prevailing market price on the date accepted, if lower.

7. Changes and/or Extras. Except as specifically provided for herein, no changes as to quantities, description, price, destination for delivery or any other term of this contract shall be made, nor shall any charge for extras be allowed unless same have been authorized in writing by the Company's authorized agent, and the proper price adjustment stated in such order. No charge shall be allowed for freight, express, cartage, or other transportation unless agreed to and specified in this order..

8. Shipments. No charges will be made for packing, crating, or cartage unless specifically authorized by this Purchase Order. Vendor warrants that goods supplied will be adequately contained, packaged, and labeled, and are suitably packed to assure safe transit and to secure lowest transportation and insurance rates. Invoices bearing transportation charges must be supported with transportation bills showing weight and rate. Tax shall not be imposed on transportation charges. For material delivered in error, or in excess of quantity shown herein, Company reserves the right to return such material at Vendor's sole risk and expense. Except as otherwise expressly provided herein, title to and risk of loss on an item shipped by Vendor shall pass to Company upon Company's inspection and acceptance of such terms at Company's facility. Company's count will be accepted as final and conclusive on all shipments not accompanied by a packing ticket.

9. Company's Right of Inspection. All materials supplied on this Purchase Order shall be the best of their respective kind and shall be of new material and the manufacturer's latest design and current model. All such materials shall be subject to Company's inspection at any reasonable time before or during manufacture and within thirty (30) days after delivery to destination. Materials other than those specified shall not be supplied without Company's written approval. Rejected materials will be returned at Vendor's expense, including all transportation charges paid by Company, and Company shall not be required to accept replacements without prior written consent to replacement.

10. Company's Plans. All plans, drawings, designs, and specifications supplied to Vendor shall remain the property of Company and any information derived therefrom or otherwise communicated to Vendor shall be regarded as strictly confidential and shall not, without the written consent of Company, be disclosed to any third party or used by Vendor except in connection with furnishing any article or performing any work at the direction of Company.

Case 4:09-cv-02825   Document 1   Filed in TXSD on 09/01/09   Page 31 of 34



11. Force Majeure. Neither party hereto shall be liable to the other for default or delay in performing its obligations hereunder if caused by fire, strike, riot, war, acts of nature, governmental order or regulation, or any other similar or dissimilar occurrence beyond the reasonable control of the party so affected.

12. Prohibition against Assignment. Vendor shall not delegate or assign its performance required by this Purchase Order, nor any monies due or to become due hereunder, without Company's prior written consent, and any attempted delegation or assignment without such consent shall be void.

13. Vendor's Indemnification. Vendor agrees to indemnify, defend, and hold Company harmless from and against any and all suits, actions, legal proceedings, claims, demands, damages, costs, expenses, and attorney's fees incident to any actual or alleged infringement of any patent in the manufacture and/or sale of the articles or materials covered by this Purchase Order or in any way connected therewith or with the use thereof by Company. Vendor shall defend, indemnify, and hold Company and any parties for which Company is rendering services harmless from and against every demand, claim, cause of action, loss, liability, or expense (including legal fees) of any third party, including without limitation Vendor, Vendor's employees or agents, or Vendor's subcontractors or their employees on account of personal injury or death, loss or damage to property, or fines, penalties, assessments, or liens arising out of or incident to the material or services provided by Vendor, or breach of warranty or other breach by Vendor regardless of whether caused or contributed to, in whole or in part, by the sole or concurrent negligence of Company, its employees or contractors, unseaworthiness of any vessel, strict liability, or pre-existing condition.

14. Compliance with Laws. Vendor shall comply, and shall ensure its subcontractors comply, with all applicable laws, rules, and regulations of any federal, state, or local governmental authority which are now or may become applicable to Vendor's performance hereunder and Vendor shall defend, indemnify, and hold Company harmless from and against any claim or penalty incurred in connection therewith.

15. Remedies. No waiver by either party or any breach of any of the terms or conditions herein contained to be performed by the other party shall be construed as a waiver of any subsequent breach whether of the same or of any other term or condition hereof. Company's rights and remedies provided herein are not exclusive and are in addition to all other rights and remedies available at law.

16. Independent Contractor. Vendor shall be an independent contractor with respect to performance hereunder and neither Vendor, its employees, agents, or subcontractors, nor their employees, shall be considered servants, agents, or employees of Company. Vendor shall select the means, manner, and method of performing hereunder, being responsible to Company solely for results obtained.

17. Taxes. Taxes, if any, must be shown separately on invoices. In case it is determined that tax was not required to be paid by Vendor, Vendor shall make prompt application for the refund thereof, take all proper steps to procure the same, and when received, repay same to Company.

18. Conflicts. This Purchase Order and documents made a part hereof by reference constitute the entire agreement. All references to invitations and proposals are for information only and are not made a part of the final agreement unless expressly stated. It is the intent of the parties that the terms provided herein will control irrespective of any subsequent execution of work orders, receipts, delivery tickets, or similar instruments. In case of conflict, the provisions hereof shall override any disclaimer, limitation of warranty, limitation of liability or any other provision contained in any invoice, packing list, receipt, confirmation, requisition, acknowledgment or other document tendered by Vendor.

19. Governing Law. All matters relating to this Purchase Order shall be governed by and construed in accordance with the laws of the State of Texas, excluding its conflict of laws rules.

## TERMS & CONDITIONS RECEIPT ACKNOWLEDGEMENT

By signing this form the Company named below acknowledges receiving the
Noble Drilling Terms and Conditions.  Receipt of these Terms and Conditions are
a requirement for being set up as a vendor in our data base which will allow
transmission of funds to your company for goods and services received.

Please fax this form to Manager – Purchasing at 281-276-6146 when signed.

Signed: _____ (signature)

Print Name: _____ MARK J. TRAMMELL _____

Title: _____ CONTROLLER _____

Company Name: _ Certex USA, Inc. _____

Date: _ 7/29/2004 _____

SEP 01 2004 2:18PM   CERTEX ACCOUNTING          7136738035                P.1



Lifting Products and Services

CERTEX USA, Inc.



| | | |
|---|---|---|
| **To** Bonnie Gibson | **From:** Charisse Jones | |
| Noble Drilling | | |
| **Fax:** 281-276-6146 | **Date:** 7/30/04 | |
| **Phone:** | **Pages:** 7 (including cover sheet) | |
| **Re:** | | |

**Bonnie,**

**Per our discussion, following is a completed Vendor Enrollment Form.  The original will be mailed today per your instructions.  If you should have any questions or require any additional information, please contact me at (800) 882-9118, ext. 32 or cjones@certex.com.**

**Have a great day!**

**Charisse**

CERTEX USA, Inc
1110 Lockwood Drive
Houston, Texas 77020
Tel (713) 674-3000 ext. 32
Fax (713) 673-8035
USA WATTS 1-800-882-9118
E-mail Address: cjones@certex.com

7136738035          95%          P.01

# NOBLE DRILLING SERVICES INC.

13135 SOUTH DAIRY ASHFORD, SUITE 800 • SUGAR LAND, TEXAS 77478 • (281) 276-6100

Dear Vendor:

Your company has been nominated for addition to our approved vendor file.  Please complete the attached Vendor Enrollment Form and return the original signed form to the following address to ensure your prompt addition to our records upon final approval:

> Noble Drilling Services Inc.
> Attn:  Accounts Payable
> 13135 South Dairy Ashford
> Suite 800
> Sugar Land, Texas 77478

In our continuing efforts to provide our Vendor's with the most efficient service possible, Noble Drilling Services Inc. ("Noble"), is prepared to pay you via electronic transfer.  If you wish to take advantage of this efficient payment method, complete the Beneficiary Banking Information section of the enrollment form and indicate your preferred payment method as electronic transfer.  Vendors electing electronic payments with beneficiary banks in the United States must also sign the attached Terms and Conditions for ACH Payments.

United States companies must also complete and return the attached form W-9.

Feel free to contact Bonnie Gibson at 281-276-6156 if you have any questions about the attached forms.  Your original signed forms must be received in Accounts Payable before your company can be approved and added to our approved vendor list.

We at Noble look forward to long and productive business relationship.

Sincerely,


Tim Thomasson
Vice President & Controller